UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHUVO JIT DATTA, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-2937 (PLF) |
| MARCO A. RUBIO,[1] Secretary of State, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

OPINION

On November 6, 2023, Plaintiff Shuvo Jit Datta, a national of the People's Republic of Bangladesh, submitted an Online Nonimmigrant Visa Application (Form DS-160) with the U.S. Consulate in Jeddah, Saudi Arabia. See Compl. § V ¶ 1, 3. The consular officer ultimately refused Mr. Datta's application and placed it in "administrative processing." Id. ¶ 4. Mr. Datta asks the Court to compel the defendants to adjudicate his visa application.

Pending before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon careful consideration of the parties' written submissions and the relevant authorities, the Court grants defendants' motion and dismisses the complaint.[2]

---

[1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, current U.S. Secretary of State Marco A. Rubio and current U.S. Attorney General Pamela J. Bondi are "automatically substituted" as parties to this litigation.

[2]  The Court has reviewed the following papers in connection with this matter: Plaintiff's Complaint for Writ of Mandamus ("Compl.") [Dkt. No. 1]; Defendants' Motion to

I.  BACKGROUND

*A.  Statutory Background*

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., sets out the process by which noncitizens can apply for visas to enter the United States.  At issue in this case is an H-1B visa, an employment-based visa that allows noncitizens to perform services in a "specialty occupation" at a U.S. company for up to three years, with the opportunity to extend the visa for additional lengths of time.  8 U.S.C. § 1101(a)(15)(H)(i)(b).

To apply for an H-1B visa, a noncitizen must obtain both an approved labor certification and an approved visa petition from their employer.  U.S. Dep't of State, H-1B Specialty Occupations, DOD Coop. Rsch. and Dev. Project Workers, and Fashion Models, Petition Filing Process, https://perma.cc/63T8-88PU (last visited Feb. 18, 2025).  Then, the noncitizen must complete and submit a Form DS-160, the Online Nonimmigrant Visa Application, and appear for an interview before a consular officer at the U.S. Consulate in the noncitizen's home country.  8 U.S.C. § 1202(h); 22 C.F.R. §§ 42.61(a), 42.62.  During the interview, the noncitizen makes and executes an H-1B visa application.  See 8 U.S.C. §§ 1201(a)(1)(B), 1202(c)-(d).  "All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(d).  The noncitizen bears the burden of proving that he or she is eligible to receive the visa.  8 U.S.C. § 1361.

After the noncitizen's visa application has been completed and executed before a consular officer, the consular officer must "issue the visa" or "refuse the visa."  22 C.F.R. § 42.81(a); 8 U.S.C. § 1201(g).  The consular officer "cannot temporarily refuse, suspend, or

---

Dismiss ("Mem.") [Dkt. No. 6]; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.") [Dkt. No. 7]; and Defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Rep.") [Dkt. No. 10].

hold the visa for future action" after the interview. Vol. 9, Foreign Affairs Manual ("FAM") §§ 504.1-3(g), 504.9-2. The consular officer must complete this process "properly and promptly . . . in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. If the consular officer determines that "additional information from sources other than the applicant may help establish an applicant's eligibility for a visa," he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA. See U.S. Dep't of State, Admin. Processing Info., https://perma.cc/44NK-RVZE (last visited Feb. 18, 2025); 8 U.S.C. § 1201(g); Gundas v. Blinken, Civil Action No. 24-1064 (RC), 2024 WL 5056375, at *1 (D.D.C. Dec. 10, 2024).

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Under the Administrative Procedure Act ("APA"), "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA also permits courts to compel agency action that is "unreasonably delayed." 5 U.S.C. § 706(1). Under Section 706(1) of the APA, however, "a delay cannot be unreasonable with respect to action that is not required" by law. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 n.1 (2004); see also id. at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.") (emphasis in original).

B.  *Factual and Procedural Background*

Plaintiff last entered the United States on a B-1/B-2 visa in 2023. Compl. § V ¶ 1. On July 11, 2023, plaintiff was offered a Research Assistant position in the Department of

3

Chemical Engineering at the Massachusetts Institute of Technology ("MIT").  Id. ¶ 2.  His intended start date was December 1, 2023.  Id.  On October 2, 2023, MIT petitioned for an H-1B visa for plaintiff, which was approved by the U.S. Citizenship and Immigration Services ("USCIS") on October 11, 2023.  Id. ¶ 3.  The petition is valid until November 30, 2025.  Id.

On November 6, 2023, plaintiff submitted a Form DS-160 to the U.S. Consulate in Jeddah, Saudi Arabia.  Compl. § V ¶ 3.  Plaintiff attended his visa interview with the consular officer in Jeddah on November 14, 2023.  Id. ¶ 4.  After the interview, plaintiff was provided with a "221(g) slip" stating that his visa application was "refused under administrative processing and that it may take up to 6 months" for administrative processing to conclude.  Id.  The 221(g) slip also stated that plaintiff "may be asked to provide additional information later."  Compl. at Ex. 7.  To date, plaintiff's visa application remains refused.  Compl. § V ¶ 4.  Despite multiple email inquiries to the Consular Section of the U.S. Consulate in Jeddah, plaintiff has received no further updates or responses.  Id. ¶ 5.  Plaintiff alleges significant emotional distress, psychological harm, and financial strain due to his visa application remaining in administrative processing for several months with no update or explanation.  Id. ¶¶ 8-9.

On October 17, 2024, plaintiff filed this action against Antony J. Blinken, former U.S. Secretary of State (replaced by Secretary Marco A. Rubio on January 21, 2025), Merrick B. Garland, former U.S. Attorney General (replaced by Attorney General Pamela J. Bondi ("Attorney General Bondi") on February 5, 2025), Ur Mendoza Jaddou, Director of the USCIS ("USCIS Director Jaddou"), Richard C. Visek, Acting Legal Advisor for the Office of the Legal Adviser, Julie M. Stufft, Deputy Assistant Secretary for Visa Services at the U.S. Department of State, Michael Ratney, U.S. Ambassador to Saudi Arabia, Allison Dilworth, Deputy Chief of Mission to the U.S. Embassy in Saudi Arabia, and Dao Le, Consul General to the U.S. Consulate

4

in Jeddah, Saudi Arabia, in their official capacities (collectively, "defendants").  See Compl. § III ¶¶ 12-19.  Plaintiff alleges that defendants unreasonably delayed the final adjudication of his visa application and seeks to compel adjudication under the APA, 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361.  See Compl. § II ¶¶ 4-5.

On December 20, 2024, defendants filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Mem. at 1.  On December 26, 2024, plaintiff filed his opposition.  See Opp. at 1.  On January 16, 2025, defendants filed their reply.  See Rep. at 1.

## II.  STANDARD OF REVIEW

### A.  *Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress.  See Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  Lack of subject matter jurisdiction is fatal to a court's authority to hear a case.  See FED. R. CIV. P. 12(h)(3).  The plaintiff bears the burden of establishing that the Court has jurisdiction.  See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).  In determining whether to grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the plaintiff's favor and treat all well-pleaded factual allegations as true.  See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017).  Although the Court must grant a plaintiff the benefit of all reasonable inferences, it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept a plaintiff's legal conclusions.

5

Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  In determining whether a plaintiff has established jurisdiction, the Court may consider materials beyond the pleadings where appropriate.  See Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

  *B. Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure*

    To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

    In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see Ashcroft v. Iqbal, 556 U.S. at 678.  The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged."  Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018).

The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint." Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. at 678; see also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

### III.  DISCUSSION

Plaintiff seeks declaratory and injunctive relief for defendants' alleged failure to carry out functions delegated to them by law, specifically their duty to "process nonimmigrant visas properly and promptly." Compl. § I ¶ 2 (quoting 22 C.F.R. § 41.106). Plaintiff alleges causes of action arising under the APA, 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361, claiming that the delay in further adjudication of his visa application is unreasonable and seeking an order compelling defendants to adjudicate the application "without further delay." Compl. at 13; id. at § II ¶¶ 4-5. The Court addresses plaintiff's APA and mandamus claims jointly because whether a plaintiff seeks a writ of mandamus or to compel agency action under the APA, the Court only has jurisdiction where the plaintiff can identify a discrete, non-discretionary duty for the agency to act. See, e.g., Heckler v. Ringer, 466 U.S. 602, 616 (1984); Norton v. Southern Utah Wilderness All., 542 U.S. 55, 64 (2004).

Defendants advance three arguments in support of their motion to dismiss. First, defendants argue that plaintiff lacks standing to sue USCIS Director Jaddou and Attorney General Bondi because neither defendant had a role in the adjudication of plaintiff's visa application, and both defendants lack the authority to re-open and re-adjudicate the application. Mem. at 4-5. Second, defendants argue that the consular nonreviewability doctrine bars judicial

7

review of the consular officer's decision to refuse plaintiff's visa application. Id. at 10-13. Third, defendants argue that plaintiff's complaint fails to identify a clear, non-discretionary duty requiring defendants to further adjudicate plaintiff's visa application. Id. at 5-10. The Court agrees with defendants' first and third arguments and grants defendants' motion to dismiss.

### A. Improper Defendants

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 378 (2024). To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." Id. at 380 (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009), and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); accord New York Ctr. for Foreign Pol'y Affs. v. U.S. Dep't of State, Civil Action No. 20-3847 (PLF), 2024 WL 3400122, at *3 (D.D.C. July 12, 2024). If a plaintiff cannot demonstrate all three requirements, the Court must dismiss plaintiff's lawsuit for lack of jurisdiction. See Hoffman v. Jeffords, 175 F. Supp. 2d 49, 53 (D.D.C. 2001), aff'd, Civil Action No. 02-5006, 2002 WL 1364311 (D.C. Cir. May 6, 2002).

Here, plaintiff has failed to establish the causation and redressability requirements of standing as they relate to USCIS Director Jaddou and Attorney General Bondi.

### 1. The Causation Requirement

Plaintiff fails to allege any involvement of USCIS Director Jaddou or Attorney General Bondi in the allegedly delayed adjudication of his visa application. Plaintiff asserts that USCIS Director Jaddou is a proper defendant because she reports to the Deputy Secretary of the

8

U.S. Department of Homeland Security ("DHS"), whose powers and duties include the administration and enforcement of immigration laws, approving visa petitions, and "issu[ing] regulations regarding visa issuances and assign[ing] staff to consular posts." Opp. at 13. Plaintiff asserts that Attorney General Bondi is a proper defendant because the Executive Office for Immigration Review ("EOIR"), a component of the Department of Justice, is responsible for "conducting immigration court proceedings, appellate reviews, and administrative hearings to administer and interpret U.S. immigration laws." Id. at 14.

These general arguments, however, fail to establish a meaningful connection between the defendants' actions and plaintiff's alleged injuries. See Siddiqui v. Blinken, 646 F. Supp. 3d 69, 75 (D.D.C. 2022) (dismissing USCIS Director and Attorney General as defendants because plaintiff made "no substantive allegations about [their] roles" in processing plaintiff's visa petition); Kahbasi v. Blinken, Civil Action No. 23-1667 (LLA), 2024 WL 3202222, at *4 (D.D.C. June 27, 2024) (dismissing Attorney General as defendant because plaintiff failed to connect Attorney General's actions and plaintiff's alleged injuries).

2. The Redressability Requirement

Plaintiff fails to demonstrate how either USCIS Director Jaddou or Attorney General Bondi have the authority to redress his injury. The INA, which governs visa application processing, "expressly delegates to consular officers" – and not to any other individuals – "the decision whether to issue immigrant and nonimmigrant visas." Kolesnikov v. Blinken, Civil Action No. 23-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024). Because "consular officers [have] exclusive authority" in adjudicating his application, plaintiff cannot show that his injury is redressable by USCIS Director Jaddou or Attorney General Bondi. See Siddiqui v. Blinken, 646 F. Supp. 3d at 75.

Plaintiff's claims against USCIS Director Jaddou and Attorney General Bondi therefore must be dismissed for lack of standing.

### B. Consular Nonreviewability Doctrine

Defendants argue that plaintiff's claims must be dismissed because the consular officer's decision to refuse plaintiff's visa application is final and thus unreviewable under the consular nonreviewability doctrine. See Mem. at 10. Plaintiff counters that because his visa application was refused for further "administrative processing," the consular officer's decision is not final and is therefore subject to judicial review. See Opp. at 21. As explained below, the Court finds it unnecessary to resolve this dispute.

The consular nonreviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021); see also Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024) ("The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions."). The consular nonreviewability doctrine arises from policy concerns associated with foreign relations, matters normally left to the "political branches of government." See Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 2021) (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952)). The doctrine only precludes judicial review of a consular officer's "final visa determinations." See Shabestary v. Sanders, Civil Action No. 24-362 (CRC), 2024 WL 5118229, at *3 (D.D.C. Dec. 16, 2024) (quoting Giliana v. Blinken, 596 F. Supp. 3d 13, 18 (D.D.C. 2022)) (emphasis added).

Several judges in this district have concluded that a consular officer's decision to refuse a visa application for further administrative processing is not a final decision, and thus the consular nonreviewability doctrine does not apply. See, e.g., Baygan v. Blinken, Civil Action

10

No. 23-2840 (JDB), 2024 WL 3723714, at *4 (D.D.C. Aug. 8, 2024) (concluding that a Section 221(g) refusal pending administrative processing is not a final decision); Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (same); Vulupala v. Barr, 438 F. Supp. 3d 93, 99 (D.D.C. 2020) (same).

In this Court's view, the D.C. Circuit's recent opinion in Karimova v. Abate ("Karimova") casts doubt on the reasoning in those decisions. See Civil Action No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam). In Karimova, the Circuit explained that a visa application "remains officially refused" once "a consular officer makes an official decision refusing to issue a visa," even if the visa is later "place[d] . . . in administrative processing." Id. at *2. Karimova suggests that once "[a] consular officer reviewed [plaintiff's] application, interviewed [him], and ruled that no visa would be granted," plaintiff's application was "officially refused" despite its subsequent placement in administrative processing. Asadi v. U.S. Dep't of State, Civil Action No. 23-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024) (quoting Karimova, 2024 WL 3517852, at *4). In other words, a consular officer's refusal of a visa application is a final decision.

In any event, the Court need not determine the extent to which Karimova upends prior decisions examining the consular nonreviewability doctrine because there are independent reasons to dismiss plaintiff's claims. See infra Section III.C; Hamdan v. Oudkirk, Civil Action No. 24-1001 (BAH), 2024 WL 4553983, at *6 (D.D.C. Oct. 23, 2024) (post-Karimova suit assuming favorably to plaintiff that the consular nonreviewability doctrine does not bar review of their claims because the claims fail for other reasons); Sharifishourabi v. Blinken, Civil Action No. 23-3382 (RC), 2024 WL 3566226, at *13-14 (D.D.C. July 29, 2024) (noting that Karimova "casts doubt" on prior decisions concerning the consular nonreviewability doctrine, but finding

11

that it "need not conclusively determine the extent to which [Karimova] disrupts prior decisions" because dismissal was appropriate on the merits).

### C. *Non-Discretionary Duty*

Defendants also argue that plaintiff's claims are unreviewable because plaintiff cannot identify a "clear, non-discretionary duty requiring a consular officer to take any action" on plaintiff's visa application now that it has been refused. See Mem. at 5. Defendants again point to Karimova as dispositive of plaintiff's claims. Id. at 5-10. Plaintiff contends that adjudication of his visa application is a discrete, non-discretionary agency action that defendants have failed to perform within a reasonable time. Opp. at 15-16. Plaintiff also cites a decision from this district and an out-of-circuit decision from California that decline to follow Karimova. Id.; see Hajizadeh v. Blinken, Civil Action No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) ("This court has considered Karimova but declines to follow it."); Sheikhalizadehjahed v. Gaudiosi, Civil Action No. 24-1136 (SCR), 2024 WL 4505648, at *7 n.6 (E.D. Cal. Oct. 16, 2024) ("The Court is not persuaded by Karimova's holding on § 555(b).").

Karimova's facts are not meaningfully distinguishable from the facts at issue here, and the Court finds the D.C. Circuit's reasoning in Karimova persuasive.[3] In Karimova, as in the

---

[3] Judges in this district are split as to whether Karimova is precedential. In Hajizadeh v. Blinken, Judge AliKhan notes that Karimova is not "controlling" because it is "an unpublished disposition," citing D.C. Circuit Rule 36(a)(2). Civil Action No. 23-1766, 2024 WL 3638336 (LLA), at *3 n.3 (Aug. 2, 2024). See also Ahmed v. Blinken, Civil Action No. 24-0153 (LLA), 2024 WL 4903771, at *4 n.4 (D.D.C. Nov. 27, 2024). Magistrate Judge Faruqui agrees. See Haeri Mehneh v. Blinken, Civil Action No. 24-1374, 2024 WL 5116521, at *5 (ZMF) (D.D.C. Dec. 16, 2024). But other judges in this district have treated Karimova as binding precedent. See, e.g., Deylami v. Kvien, Civil Action No. 23-1393, 2025 WL 219064, at *5 (TSC) (D.D.C. Jan. 16, 2025); Mojaver v. Garland, Civil Action No. 24-0253 (ABJ), 2024 WL 4715419, at *2-3 (D.D.C. Nov. 7, 2024); Amjad v. Schofer, Civil Action No. 24-1773 (CJN), 2024 WL 4416984, *1 (D.D.C. Oct. 4, 2024). This Court leaves the question of Karimova's precedential nature for another day.

instant case, a consular officer interviewed the plaintiff and "officially refused" her visa application and "placed her application in administrative processing in order to verify qualifications for [her requested] visa." Karimova, 2024 WL 3517852, at *2 (internal quotation marks omitted). About a year after her interview, the plaintiff filed suit alleging that the consular officer had breached their duty under Section 555(b) of the APA to "make a final decision" on the plaintiff's visa application because a refusal pending administrative processing "is not a final decision." Id. (internal quotation marks omitted). By "final decision," the plaintiff meant that the consular officer was "required to either issue her a visa or refuse her application, without then also placing it in administrative processing." Id. at *3. The plaintiff "[i]nvok[ed] both the Administrative Procedure Act and the Mandamus Act," and "asked the court to compel the consular officer to . . . finally adjudicate her visa." Id. The government moved to dismiss the plaintiff's complaint, arguing that courts cannot review consular decisions on visa applications under the consular nonreviewability doctrine and that, in any case, there had not been unreasonable delay in processing the plaintiff's visa application. Id. The district court granted the government's motion to dismiss. Id.

> The D.C. Circuit affirmed, describing the visa application process as follows:
>
> [O]nce the [visa] applicant properly applies, the consular officer – by regulation – "must issue" or "refuse" the visa. 22 C.F.R. § 42.81(a) (emphasis added); see 9 FAM § 504.1-3(g) . . . .
>
> After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change. As a result, the consular officer may choose to place an officially refused application in administrative processing . . . . If the consular officer gets enough new information, . . . the officer can determine sua sponte that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. Id. § 306.2-2(A)(a)(2). Unless and until that happens, though, the visa

13

> application remains officially refused. Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects.

Karimova, 2024 WL 3517852, at *1-2 (emphasis added; footnote omitted).

The Circuit held that because the plaintiff's visa application was officially refused before being placed into administrative processing, the plaintiff's "matter ha[d] already been conclude[d]." Karimova, 2024 WL 3517852, at *4 (internal quotation marks omitted); see 5 U.S.C. § 555(b). "She received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." Id. at *4; see 22 C.F.R. § 42.81; 8 U.S.C. § 1201(g). The Circuit noted that "even on [the plaintiff's] reading, Section 555(b) at most could have entitled her to the official refusal decision she already received [because] Section 555(b) does not in any way dictate how the agency can handle her rejected paperwork after a decision has been made." Karimova, 2024 WL 3517852, at *4 (emphasis in original). The Circuit also found "[n]othing in federal law [that] speaks to the ability of a consul, after [refusing an application], to hold onto the application in case circumstances later change in the applicant's favor . . . saving the applicant the time and cost of filing a whole new visa application." Id. Accordingly, the Circuit concluded that there was no basis to compel agency action under Section 555(b) of the APA or the Mandamus Act because the plaintiff failed to identify a clear, non-discretionary duty requiring the government to further adjudicate an already-refused visa application. See id. at *6.

The Court agrees with the Circuit's analysis and finds it persuasive. As other judges in this district have held, "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. §§ 41.106 and 41.121(a). Vulupala v. Barr, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); Khazaei v. Blinken, Civil Action No. 23-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023). Here, a consular officer has refused plaintiff's visa

14

application. Compl. § V ¶ 4. Plaintiff has conceded that to date, his visa application "remains refused." Id. And as the Circuit explained in Karimova, the consul's refusal of plaintiff's visa application means that plaintiff's "matter has already been conclude[d]." See Karimova, 2024 WL 3517852 at *4 (internal quotation marks omitted); see also Deylami v. Kvien, Civil Action No. 23-1393 (TSC), 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) ("Because refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that [plaintiff] claims has been unreasonably delayed—further adjudicating his refused visa application."); Mojaver v. Garland, Civil Action No. 24-0253 (ABJ), 2024 WL 4715419, at *3 (D.D.C. Nov. 7, 2024) ("According to the Court of Appeals, the APA does not create a non-discretionary duty for defendants to revisit visa applications after they have been 'refused' under section 221(g), no matter what the consulate said it was doing next."); Amjad v. Schofer, Civil Action No. 24-1773 (CJN), 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (same); Hemmat v. Blinken, Civil Action No. 23-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) (same); Ibrahim v. Spera, Civil Action No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (same).

        Plaintiff argues that he "does not seek to challenge or adjudicate the merits of a decision to issue or withhold his application." Opp. at 19 (internal quotations omitted). Rather, his claims challenge the defendants' unreasonable delay in issuing a "final" decision on his visa application, no matter what that decision may be. Id. at 15-16. The Court is not persuaded by this distinction, at least as it applies here. Had the defendants taken no adjudicatory action, the Court does not doubt its power to "compel the agency to issue a decision – up or down – on a long-pending application." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d at 13. In this case, however, defendants already have taken definitive action, and plaintiff is effectively

15

asking the Court to order defendants to "engage in discretionary re-adjudication of that action more quickly." Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 104 (D.D.C. 2024). The Court cannot order further review or adjudication of plaintiff's visa application without requiring the consular officer to re-examine the merits of the application. See id. ("Even if such an order does not expressly mandate [the defendant] to reach a specific outcome on Plaintiffs' visas, it still affects the substance of [the defendant's] initial refusals by requiring their reexamination.").

Plaintiff's other attempts to identify a legal basis for the duty he claims are also unavailing. Plaintiff's reliance on Sections 706(1) and 555(b) of the APA, as opposed to solely Section 555(b), does not meaningfully distinguish his case from Karimova. Compl. § II ¶¶ 4-5. Like Section 555(b), a claim under Section 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," a threshold requirement that plaintiff has not met. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in original). Plaintiff also identifies several laws and regulations requiring consular officers to "properly and promptly" process visa applications and then to "issue" or "refuse" them. Compl. § IV ¶ 31; see 22 C.F.R. §§ 41.106, 41.121(a). Those duties were satisfied when plaintiff's application was "refused." See Karimova, 2024 WL 3517852, at *4. And to the extent that the State Department's collection of a visa application fee under 22 C.F.R. § 41.107 creates a duty to adjudicate the corresponding visa application, the consular officer did so by issuing the refusal decision. See Opp. at 8; see also Hemmat v. Blinken, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) (finding the same).

Still, the Court acknowledges that it is "extremely difficult to square the Circuit's analysis [in Karimova] . . . with the communications that visa applicants actually receive from various consulates." Ibrahim v. Spera, 2024 WL 4103702, at *3 n.2. Here, after the consular

16

officer refused plaintiff's visa application, plaintiff was informed that he "may be asked to provide additional information later" and that it may take "up to 6 months" for administrative processing to conclude. Compl. at Ex. 7. He was instructed to email the consulate office if he did not receive an update more than 6 months after his interview. Id. He was even promised "another adjudication [of his visa application] once [administrative processing] is complete." Compl. at Ex. 8. These communications would lead any reasonable person to believe that consideration of their visa application is not concluded, and that the refusal of their application is not final. Though defendants may have fulfilled their statutory duties to plaintiff, their communications led plaintiff to believe that his visa application was in a state of limbo.

The Court is also troubled by Karimova's practical effect. As Magistrate Judge Faruqui noted, Karimova's holdings incentivize agencies charged with the adjudication of visa applications to simply "refuse applications out of hand and then begin the true deliberation process thereafter," leaving "no possibility for judicial oversight of untimely decision making." Haeri Mehneh v. Blinken, Civil Action No. 24-1374 (ZMF), 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024). Just as plaintiff's application has languished in "administrative processing" for over a year with no updates, Karimova gives agencies carte blanche to administratively process noncitizens' visa applications ad infinitum with no avenue for judicial review.

Yet the Circuit makes an important, separate point in Karimova: plaintiff's claims "[are] not standard administrative fare." Karimova, 2024 WL 3517852, at *5. Rather, they "ar[ise] within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power." Id. (quoting Harisiades v. Shaughnessy, 342 U.S. at 588–589) (brackets and internal quotations omitted); see also Dep't of State v. Munoz, 602 U.S. 899, 907 (2024) ("For more than a century, this Court has recognized

17

that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (quoting Trump v. Hawaii, 585 U.S. 667, 702 (2018)). Consequently, these "types of claims generally fall outside the Judicial Branch's wheelhouse." Karimova, 2024 WL 3517852, at *5. See also Saavedra Bruno v. Albright, 197 F.3d 1153, 1162 (D.C. Cir. 1999) ("[w]hen it comes to matters touching on national security or foreign affairs—and visa determinations are such matters—the presumption of [judicial] review 'runs aground.'") (quoting Dep't of Navy v. Egan, 484 U.S. 518, 527 (1988)); Gonzalez Paredes v. Vila, 479 F. Supp. 2d 187, 195 (D.D.C. 2007) ("[t]he conduct of foreign relations is not entrusted to the judiciary.").

In this Court's view, the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court. See Mathews v. Diaz, 426 U.S. 67, 81 (1976) (explaining that, because "decisions [concerning the admission of foreign nationals] may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary").

The Court thus finds that plaintiff has failed to identify a clear, non-discretionary duty requiring defendants to further adjudicate his already-refused visa application. Accordingly, there is no basis under the APA or the Mandamus Act for the Court to order defendants to take any additional action.[4]

---

[4] Even assuming arguendo that defendants have a duty to act, plaintiff's complaint falls short of proving that defendants' alleged delay is "unreasonable" under TRAC. See Telecommunications Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984). In his complaint, plaintiff alleges that 11 months had passed since his visa application was refused. Compl. § V ¶ 9. The Court is sensitive to how frustrating such a delay must be for plaintiff.

IV. CONCLUSION

For these reasons, defendants' motion to dismiss is GRANTED. The complaint is dismissed as to defendants USCIS Director Jaddou and Attorney General Bondi under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. The complaint is dismissed as to the remaining defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 3\10\25

---

Judges in this Circuit have held, however, that visa adjudication delays in the vicinity of five years are not unreasonable under the first and second TRAC factors. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 342 (D.C. Cir. 2023) (finding an over four year delay not unreasonable); Sarlak v. Pompeo, Civil Action No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (courts in this district have "found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."); Tekle v. Blinken, Civil Action No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases finding the same).

Plaintiff has also alleged significant emotional distress, psychological harm, and financial strain. Compl. § V ¶ 8-9. These harms, however, do not threaten plaintiff's physical health and wellbeing in a manner compelling enough to clear the third and fifth TRAC factors. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th at 345 (concluding that the third and fifth TRAC factors did not favor the plaintiffs where they did not, "for example, allege that they are unable to access electricity, water, food, or shelter."); Ahmadi v. Scharpf, Civil Action No. 23-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (granting the defendants' motion to dismiss despite the plaintiff's claims of healthcare expenses resulting from a visa delay).